667 S.E.2d 573

**In re SAMANTHA S. and Hope S.**

No. 33713.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 3, 2008.

Decided Sept. 26, 2008.

518

Jane Moran, Jane Moran Law Office, Williamson, for Appellants, Larry S. and Debra S.

Diana Carter Wiedel, Williamson, Guardian Ad Litem for the Minor Children, Samantha S. and Hope S.

Darrell V. McGraw, Jr., Attorney General, Michael L. Jackson, Assistant Attorney General, Charleston, for West Virginia Department of Health and Human Resources.

PER CURIAM:[1]

This case presents for review the issue of grandparent visitation rights, which stems from an underlying abuse and neglect case involving the biological parents.[2] The intervenors below and appellants herein, the *paternal* grandparents, Larry S.[3] and Debra S.

---

[1]. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

[2]. The biological parents' rights were terminated on July 18, 2005. The termination is not an issue in this appeal.

[3]. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

(hereinafter "Larry" and/or "Debra" or "paternal grandparents"), were granted physical custody of the subject children and have started the process to adopt them.[4] Larry and Debra appeal from an order entered June 28, 2007, by the Circuit Court of Mingo County. By that order, the circuit court granted unsupervised visitation to the *maternal* grandparents, John T. and Mabel T. (hereinafter "John" and/or "Mabel" or "maternal grandparents").[5] On appeal to this Court, Larry and Debra argue that all of the evidence, including that submitted by mental health experts, illustrates that visitation with the maternal grandparents is harmful to the children and not in the children's best interests. Thus, the paternal grandparents seek the reversal of that portion of the circuit court's June 28, 2007, order that allows unsupervised visitation between the children and the maternal grandparents, and further ask that the visitation rights of John and Mabel be terminated. Based on the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm that portion of the June 28, 2007, circuit court order that is unrelated to the visitation rights of the maternal grandparents, John and Mabel. Further, we reverse that portion of the June 28, 2007, circuit court order that allows unsupervised visitation by the maternal grandparents, John and Mabel. Finally, we remand this case to the Circuit Court of Mingo County for entry of an order terminating the visitation rights of the maternal grandparents, John and Mabel, consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case has a long legal history that began when the family moved from Kentucky to West Virginia. The Department of Health and Human Resources (hereinafter "DHHR") opened a case in December 2004 as a result of a request from Kentucky, which had an open case involving Joe S. and Faye S. (hereinafter "Joe" and/or "Faye" or "biological parents") and their two girls, Samantha S. (hereinafter "Samantha") and Hope S. (hereinafter "Hope"), to monitor the family when they relocated to Mingo County, West Virginia. On March 10, 2005, the DHHR filed an emergency petition seeking immediate removal of Samantha and Hope[6] from the custody of their parents.[7] The Circuit Court of Mingo County reviewed the petition, removed the children from the custody of their biological parents, gave legal custody to the DHHR and awarded physical custody to the maternal grandparents, John and Mabel.

A preliminary hearing was held on March 15, 2005; wherein, the circuit court found probable cause to support the allegations of abuse and neglect. The trial court found continued physical custody with John and Mabel to be in the best interests of the children, and ordered a preadjudicatory improvement period for both parents. Thereafter, the improvement period was extended, with the directive that the biological parents undergo a substance abuse evaluation.

At an adjudicatory hearing on June 14, 2005, the circuit court found that the biological parents had failed to adhere to the terms of their improvement period and were once again incarcerated. Thus, the circuit court revoked the preadjudicatory improvement period. The circuit court additionally permitted the *maternal* grandparents, John and Mabel, to relinquish physical custody of the

4. The adoption proceedings have been stayed pending the outcome of this appeal.

5. The maternal grandparents, John and Mabel, have not filed any responsive pleadings in this matter and did not participate in the oral argument in this case. See *infra* note 14.

6. Samantha and Hope are sisters. Their respective birth dates are January 6, 2000; and June 5, 2001.

7. The petition alleged that the young children could not protect themselves from the negative behaviors of the parents. The alleged negative behaviors included repeated domestic violence incidents between the parents, drug use by the parents in front of the children, and the parents' failure to cooperate with recommended community services to remedy the problematic behaviors.

children to the DHHR[8] to facilitate the placement of the children in the physical custody of their *paternal* grandparents, Larry and Debra.

Subsequently, in a dispositional hearing of July 18, 2005, the circuit court terminated the parental rights of the mother and recognized the father's voluntary relinquishment of his parental rights. The circuit court awarded the mother post-termination visitation with the children. The circuit court also awarded Larry and Debra, the paternal grandparents, legal and physical custody of the children in consideration of how well the children were doing in their home and in recognition of the recommendations of the DHHR and the Guardian Ad Litem that the children remain there due to the stable structure Larry and Debra could provide. The circuit court granted John and Mabel grandparent visitation. In granting grandparent visitation to John and Mabel, the circuit court recognized that they had initially been uncooperative with the DHHR, failing to submit financial records when requested and failing to complete the ordered psychological evaluations. The court also noted that John and Mabel had violated a court order in allowing the children to have contact with their mother by phone while she was incarcerated.[9] However, the circuit court reasoned that John and Mabel were now being more cooperative, and were building a new home to address the size and safety concerns raised by the DHHR's study. The visitation by John and Mabel was ordered to be supervised by Larry and Debra, the paternal grandparents, until such time as John and Mabel's new home was completed. Then, the visitation would occur at John and Mabel's new home, would include overnight visits, and would be unsupervised.

A judicial review was conducted by the circuit court on November 7, 2005. At this hearing, it was learned that John and Mabel had not exercised their granted supervised visitation. They stated that they preferred to wait until their new home was completed and they could begin unsupervised visitation. Another judicial review was held on February 6, 2006. It is clear that some level of visitation was being exercised by John and Mabel by this point because, during this hearing, the Guardian Ad Litem reported that John and Mabel were making inappropriate comments to the children and threatening that they would not be allowed to return to Larry and Debra if they did not behave during their visits with John and Mabel.[10]

On May 8, 2006, a review hearing was held. The DHHR moved to terminate the unsupervised visitation of John and Mabel on the grounds that the children were experiencing significant difficulty and behavioral problems following visits with their maternal grandparents. At an evidentiary hearing held on the motion, Dr. Pam Ryan, the children's psychologist, testified that the unsupervised visitation with John and Mabel should cease. Dr. Ryan explained that the unsupervised visitation was the direct stressor leading to the children's problem behaviors. She testified that Hope disclosed that a boy in the neighborhood, who was later found to be John and Mabel's grandson, repeatedly exposed himself to her and that Mabel did nothing about it when Hope reported it to her. Dr. Ryan further noted that John and Mabel had permitted, against court order,[11] phone contact with the children by Faye while she was incarcerated. Regarding Samantha, Dr. Ryan reported that she had been hospitalized at Highland Hospital for seven days after she purposefully killed a kitten by throwing it against a wall. Dr. Ryan found this behavior consistent with the stabbing behavior that Samantha exhibited during play therapy. The circuit court further heard testimony from a worker with Child Protective Services (hereinafter

---

8. From the record, the reason for the relinquishment of custody is unclear. However, it appears that John and Mabel considered it to be a temporary placement.

9. The circuit court had found that a visitation schedule with the mother was not to be implemented until after she was released from jail.

10. Mental health experts opined that this type of comment created panic and anxiety in the children as they feared they would not be allowed to return to the home of Larry and Debra.

11. *See supra* note 9.

"CPS"), who stated that she had prepared a protection plan in response to the allegations of the boy exposing himself to the girls, but that John had refused to sign the plan. The CPS worker recommended that unsupervised visitation be terminated. The court also heard testimony from John and Mabel. John and Mabel's testimony minimized any unsettling behavior by the girls, and denied any sexually inappropriate conduct by their grandson toward the girls. The testimony by John and Mabel was very emotional and stated their desire to have the girls in their lives.

Upon conclusion of the evidence, the circuit court ordered that unsupervised visitation be stopped pending further order of the court and further psychological testing of the grandparents. The circuit court also ordered a schedule of supervised visitation with John and Mabel to commence and ordered additional psychological evaluations of Samantha and Hope. The DHHR was granted legal custody of the girls to effectuate the adoption of the children by Larry and Debra, in whose physical custody they remained. Finally, the circuit court ordered the parties to return at a later date, after completion of the psychological testing, for further discussion of what type or amount of visitation would be in the best interests of the children.

The subsequent psychological evaluations agreed with the recommendations of Dr. Ryan, and concluded that the children exhibited maladaptive behaviors likely to escalate if they were not residing in a structured home with immediate consequences and consistent support. The psychologist noted serious and concerning behaviors in Samantha that might be reactive to the upheavals in her life. In evaluating the differing parenting approaches taken by the grandparents, the psychologist noted that John and Mabel seemed to minimize maladaptive behaviors of the children while Larry and Debra voiced concern and attempted to obtain mental health treatment for the children. The psychologist further expressed concern regarding John's adamant dislike of Samantha being prescribed psychotropic medication and regarding Mabel's lack of concern surrounding the alleged inappropriate behavior by her grandson which might lead to a failure to protect her granddaughters from sexual abuse. The psychologist concluded that John would likely continue to engage in negative behaviors, including speaking of the paternal grandparents in very negative terms, without supervision during visits. This behavior would perpetuate continued confusion in his granddaughters. It was also noted that the children's worst behavior was always exhibited after visitation with John and Mabel, indicating the visits as the significant stressor in the lives of the children. The psychologist stated that "[t]heir [Samantha and Hope's] placement in an adoptive home where the severity of their potential behaviors can be appreciated will be critical to their overall well-being and long-term development".

Another judicial review was conducted on June 28, 2007, to examine the placement of the children and discuss the findings of the psychological report. The circuit court found that continued placement of the children in the home of Larry and Debra was in the best interests of the children and stated in its order that

[a]fter reviewing the Psychological Evaluations the Court again **FINDS** that the children should be placed with [Larry and Debra], as set forth in the Court['s] Final Dispositional Order. The psychologist stated "the ... children vacillating between two homes with different attitudes, expectations, routines and discipline can be very detrimental to their development. Placement in an adoptive home where the severity of their behavior is appreciated will be critical to their overall long-term development. Specifically, Samantha is anticipated to flourish most when her behavior is attended to, properly addressed and consistently punished/reinforced. Failure on any adult's part to recognize the potential threats this child has around others, as well as animals, may result in future injuries. Throughout the course of this evaluation and that of parental fitness assessments also completed in our office, the [paternal grandparents, Larry and Debra] have displayed a greater sense of awareness and sincere appreciation of their granddaughters' problematic issues.

Their compliance with psychiatric treatment and counseling and the initiation of immediate professional intervention in times of crisis for Samantha have been evidenced."

Further, the circuit court's order went on to state that

In regards to the [maternal grandparents, John and Mabel,] the psychologists stated that although [their] intentions with their granddaughters are well intended, [they] do not appreciate how disruptive, confusing, and emotionally painful it is for their granddaughters to be torn between grandparents all the while trying to resolve their feelings about their own parents. The psychologist stated that [they] refuse to accept the fact that the children have serious problems and blame any problems on [Larry and Debra]. The psychologist also stated that [the maternal grandparents] would have problems educating the children and providing for their emotional development.

However, despite these findings and against the advice of all of the mental health experts, the DHHR, and the Guardian Ad Litem, the circuit court found that it "would be in the best interests of the children to modify the previous dispositional order and to have unsupervised visitation with the [maternal grandparents][.]" John and Mabel, the maternal grandparents, were allowed *unsupervised* visitation with the children every other Friday from 6:00 p.m. until 1:00 p.m. Saturday. The court made this finding without further explanation of its reversal of supervised visitation, and in contravention of the unanimous recommendations by all experts and by the DHHR that visitation with John and Mabel be terminated. The current appeal to this Court was filed by Larry and Debra, the paternal grandparents, seeking a reversal of the circuit court's order entered June 28, 2007, granting John and Mabel unsupervised visitation.

The children's Guardian Ad Litem, Diana Carter Wiedel, has recommended that the children remain with Larry and Debra and that they be adopted by them.[12] She further

recommends that any visitation with John and Mabel be at the discretion of the children· and Larry and Debra, and with the approval of the children's psychologist. Otherwise, she feels that it is unlikely that visitation with the maternal grandparents, John and Mabel, is in the best interests of the children.

Subsequent to the filing of the petition for appeal before this Court, at the latest judicial review conducted on September 24, 2007, the circuit court inquired into the status of the case and was informed that the children continued to do well with Larry and Debra but that John and Mabel had refused to exercise any visitation because they believed it was not sufficient and was confusing to the children. John and Mabel were reported to have not seen the children from the first part of June 2007 through the date of the review hearing. Upon motion of the DHHR, the circuit court, by order entered October 12, 2007, terminated all visitation due to lack of participation by John and Mabel. The court also continued placement of the children in the home of Larry and Debra for finalization of the adoption. John and Mabel did not appeal from this ruling terminating their grandparent visitation.[13]

## II.

## STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order granting the maternal grandparents, John and Mabel, unsupervised visitation with the children against the recommendations of all of the mental health experts, the children's Guardian Ad Litem, and the DHHR. While the case before this Court requires a determination of grandparent visitation rights, it began as a child abuse and neglect proceeding. We previously explained that, in the realm of an abuse and neglect case,

[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts with-

---

12. *See* note 4, *supra.*

13. See footnotes 14 and 15, *infra.*

out a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). Further, as a general guideline in light of the fact that this case requires us to review a decision made on grandparent visitation, we have held that " '[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005). Mindful of these applicable standards, we now consider the substantive issues raised herein.

## III.

## DISCUSSION

On appeal to this Court, Larry and Debra agree with the circuit court's decision to grant them physical custody of Samantha and Hope pending their adoption of them. However, Larry and Debra disagree with the lower court's order awarding. the maternal grandparents unsupervised visitation, and seek a termination of visitation by the maternal grandparents in the interests of fostering a permanent placement for Samantha and Hope that is in their best interests.

The DHHR agrees with Larry and Debra and takes the position that it is not in the best interests of Samantha and Hope to have visitation with John and Mabel, and that such visitation should be terminated.[14] In its brief, the DHHR further argues that the appeal has been rendered moot by the circuit court's subsequent order entered October 12, 2007, which terminated all visitation with John and Mabel. However, during oral argument before this Court, the DHHR recanted its position on the mootness issue and urged this Court to address the substantive issue of the grandparent visitation as an important issue to this case and to provide guidance for future cases. We do not find that this case has been rendered moot by the October 12, 2007, order;[15] therefore, we will

14. Even though the maternal grandparents' visitation is at issue, John and Mabel did not file any pleadings with this Court in response to Larry and Debra's petition for appeal from the June 28, 2007, circuit court order. Moreover, John and Mabel have not challenged the subsequent ruling by the circuit court that terminated their visitation rights. *See supra* note 5 and *infra* note 15.

15. We recognize that this Court has stated that " '[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.' Syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984)." Syl. pt. 1, *State ex rel. J.D.W. v. Harris*, 173 W.Va. 690, 319 S.E.2d 815 (1984). However, the issue of mootness is not relevant to our decision insofar as the circuit court was without authority to enter the October

12, 2007, order. We have previously explained that

[i]n the absence of statutory or constitutional provision to the contrary, when a proceeding in its entirety is removed from a lower court to an appellate court, the jurisdiction of the lower court as to such proceeding is lost and ceases until the proceeding is decided by the appellate court and the lower court does not again acquire jurisdiction of such proceeding until the decision of the appellate court is certified to the lower court and regularly entered of record.

Syl pt. 1, *State ex rel. Chambers v. County Court of Mingo County*, 146 W.Va. 846, 123 S.E.2d 241 (1961). We note that Rule 50 of the Rules of Procedure for Child Abuse and Neglect Proceedings does allow a circuit court to exercise its discretion to consider ancillary matters that are not directly pending before this Court, and to enter an order thereon. Rule 50 states:

The filing of a petition for appeal does not operate to automatically stay the proceedings

now turn to the substantive issue of the grandparent visitation and the permanency of the children's placement.

In assessing grandparents' visitation rights, this Court has always emphasized that the best interests of the children are paramount and must be afforded due deference. The emotional complexities of the instant case are enormous. While under the umbrella of a case where the children have been adjudged to be neglected and/or abused, the trial court judge terminated the parental rights of the biological parents and contended with the issue of grandparent visitation, all the while trying to maintain the children in the best environment for them. It is very clear in the hearing transcripts that the maternal grandparents, John and Mabel, truly love their granddaughters, Samantha and Hope. John and Mabel both described their former relationships with their granddaughters, pleaded to have their "babies" back and asserted that they would do anything needed to be able to maintain a relationship with the girls. While it is understandable that such a plea would not be viewed lightly by the circuit court, it is unfathomable to elevate the desires of the grandparents seeking visitation over the best interests of the children involved, especially in contravention of all of the evidence in the case as to the best interests of the children. In recognizing that Samantha and Hope had formed a bond with their maternal grandparents, John and Mabel, the circuit court's order failed to recognize that, according to all of the expert evidence presented, that attachment had a negative effect on the children.

W. Va.Code § 48–10–501 (2006) (Supp.2008) provides that "[t]he circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." We have previously explained, "while the [Grandparent Visitation Act] affords certain protections to the grandparent, it is in no measure a guarantee of the right to visitation. The best interests of the child must be given greatest priority, and the rights of the child are superior to those of the grandparent seeking visitation." *Mary Jean H. v. Pamela Kay R.*, 198 W.Va. 690, 693, 482 S.E.2d 675, 678 (1996) (per curiam). Further, "[a] trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren ... shall give paramount consideration to the best interests of the grandchild or grandchildren involved." Syl. pt. 1, in part, *In re the Petition of Nearhoof*, 178 W.Va. 359, 359 S.E.2d 587 (1987). *See also* Syl. pt. 4, *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995) (" 'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).").

All jurisprudence in this State dictates that the best interests of the children is the paramount concern guiding the circuit court's decisions. For evaluating whether grandparent visitation would be in the best interests of the child, the Legislature has compiled thirteen factors for the circuit judge to consider.[16] In the present case, the circuit court

---

or orders of the circuit court in abuse, neglect, and/or termination of parental right cases, but the circuit court or the Supreme Court of Appeals may grant a stay upon a showing of good cause. Any party seeking a stay from the Supreme Court of Appeals pending an appeal of neglect, abuse, and/or termination of parental rights cases shall submit a written motion for the stay and a brief statement explaining the need for the stay, discussing the effect of the stay on the ability of the circuit court to plan for the child and on the best interests of the child. This rule shall not preclude any motion to the circuit court for a stay which includes a brief statement of the issues previously set forth.

Therefore, the appeal to this Court to evaluate the grant of unsupervised visitation to John and Mabel is not moot because the circuit court did not have the authority to enter the October 12, 2007, order while the specific issue addressed in that order is pending before this Court.

16. Pursuant to W. Va.Code § 48–10–502 (2001) (Repl. Vol 2004),

In making a determination on a motion or petition [for grandparent visitation] the court shall consider the following factors:
(1) The age of the child;
(2) The relationship between the child and the grandparent.

found that the best interests of the children would be served by placing them with Larry and Debra with the goal of adoption. The June 28, 2007, order further found that it would be in the best interests of the children to modify the previous dispositional order and for the children to have unsupervised visitation with John and Mabel so long as all the previously ordered conditions are met. In making these findings, the circuit court order referenced the psychologists' findings that "[John and Mabel] do not appreciate how disruptive, confusing, and emotionally painful it is for their granddaughters to be torn between grandparents all the while trying to resolve their feelings about their own parents." The judge further acknowledged the psychologists' conclusion that John and Mabel "refuse to accept the fact that the children have serious problems ... and that [John and Mabel] would have problems educating the children and providing for their emotional development." Additionally, the judge adopted the psychologists' statement that "[t]he problems exhibited by the children in [Larry and Debra's] home are unlikely to abate if placed in [John and Mabel's] household and may even escalate given another change in their environment and security. Given both [John and Mabel's] skepticism that actual problems exist, they will be unlikely to effectively deal with issues the children may have emotionally." The lower

court ultimately concluded that these dispositions, i.e. physical custody to Larry and Debra and granting unsupervised visitation to John and Mabel, were the least restrictive alternatives and in the best interests of the children.

While the lower court appears to have considered all of the psychologists' reports and the arguments made by all parties in reaching its decision, there are several deficits in the June 28, 2007, order that merit further consideration. First, there is a failure to analyze any of the thirteen factors delineated by the Legislature in W. Va.Code § 48–10–502 as a prerequisite for an award of grandparent visitation. Among these factors are significant issues that the circuit court failed to consider including the effect that the visitation would have on the relationship between the children and the paternal grandparents, with whom they are residing; any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted, or condoned by the maternal grandparents; the preference of the parents, or the paternal grandparents in this case, with regard to the requested visitation; and any other factors relevant to the best interests of the children.[17] Larry and Debra noted in their brief the numerous failures of John and Mabel to comply with the various case plan requirements and court orders, including fail-

(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;

(4) The time which has elapsed since the child last had contact with the grandparent;

(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;

(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;

(8) The good faith of the grandparent in filing the motion or petition;

(9) Any history of physical, emotional or sexual abuse or neglect being, performed, procured, assisted or condoned by the grandparent;

(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

17. This Court, in light of the *Troxel v. Granville*, 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), decision, has noted that the " 'court must accord at least some special weight to the parent's own determination' " in assessing the amount of weight that should attach to the factor of parental preference. *In re Grandparent Visitation of Cathy L. (R.) M. v. Mark Brent R.*, 217 W.Va. 319, 617 S.E.2d 866 (2005) (per curiam) (quoting *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 763, 551 S.E.2d 674, 685 (2001)).

ure to turn over financial information when asked, failure to sign an emergency plan devised by the CPS worker after the girls reported John and Mabel's grandson had exposed himself to them, and the failure to sever communication between the girls and their mother while she was incarcerated. These behaviors have not demonstrated the maternal grandparents' good faith in adhering to the procedures designed for the best interests of their grandchildren. Additionally, the children's psychologists have noted the negative impact that unsupervised visitation has had on the children's behavior after their visits with John and Mabel and that this behavior has spilled over into their time with Larry and Debra. One of the concerns noted by the psychologists involved was the negative remarks and attitude of John towards Larry and Debra, and the confusion it causes for the children. Further, the judge failed to consider the adopting grandparents' desire that any visitation with John and Mabel be terminated. Finally, the order does not discuss the fact that everyone involved, with the exception of John and Mabel, recognized that unsupervised visitation was not in the best interests of the children.

The June 28, 2007, order allowed visitation with John and Mabel "so long as all previously ordered conditions are complied with." However, the judge did not specify the previous conditions to which he was referring. The only other conditions of record were the specifications that the children, along with John and Mabel, be evaluated by psychologists to determine if unsupervised visitation was proper. The psychologists concluded that unsupervised visitation would not be in the best interests of the children. As a result, there have been no conditions placed on the visitation with John and Mabel that would mitigate the negative behaviors which affect the children.

■ Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interest." The evidence presented by the DHHR, Guardian Ad Litem, two separate sets of psychological reviews, as well as the preferences of the pending adoptive parents clearly shows that visitation with John and Mabel is not in the best interests of the children.

Recognizing that visitation with the maternal grandparents is not in the best interests of the children, we wish to make clear that the maternal grandparents' visitation rights are permanently terminated. Statutory law recognizes the ability of the courts to terminate grandparent visitation in accordance with the best interests of the child standard. W. Va.Code § 48–10–1001 (2006) (Supp.2008) states that "[a]ny circuit court or family court that grants visitation rights to a grandparent shall retain jurisdiction throughout the minority of the minor child with whom visitation is granted to modify or terminate such rights as dictated by the best interests of the minor child." In the present case, the visitation rights of the maternal grandparents are terminated as dictated by the best interests of the children, Samantha and Hope.

■ As a final matter, counsel for Larry and Debra argues that permanent placement for these children has not occurred within eighteen months of the final dispositional hearing as required by Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which states that "[p]ermanent placement of each child shall be achieved within eighteen (18) months of the final disposition order, unless the court specifically finds on the record extraordinary reasons sufficient to justify the delay." Arguably, the grandparent visitation issue and the petition for appeal to this Court might justify some measure of delay; however, we are mindful that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Moreover, the stay of the adoption proceedings pending the outcome of this appeal has delayed the fulfillment of the case plan and the permanency of the placements

of the children. In order to resolve this portion of the litigation so that the paternal grandparents' adoption proceedings may proceed and the children's permanent placement be finally achieved, the Clerk of this Court is directed to issue the mandate in this case forthwith.

## IV.

### CONCLUSION

For the foregoing reasons, the June 28, 2007, order by the Circuit Court of Mingo County is hereby affirmed as to the portions unrelated to the visitation rights of the maternal grandparents, John T. and Mabel T. Moreover, the June 28, 2007, order by the circuit court is reversed insofar as it awarded unsupervised visitation to the maternal grandparents against the best interests of the children. Finally, we remand this case to the Circuit Court of Mingo County for entry of an order permanently terminating the visitation rights of the maternal grandparents, John and Mabel, consistent with this opinion. The Clerk of this Court is directed to issue the mandate in this case forthwith.

Affirmed, in part; Reversed, in part; and Remanded.

Justice ALBRIGHT, not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.