# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.P.**

**No. 20-0096** (Fayette County 19-JA-4)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Grandfather R.P.-1 and Grandmother R.P.-2, by counsel Sherman L. Lambert Sr., appeal the Circuit Court of Fayette County's January 16, 2020, order denying their motion for visitation with the child.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their motion for visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition against the parents alleging that the mother tested positive for Subutex and Oxycontin and that K.P. was born drug-exposed. The DHHR alleged the child was born with withdrawal symptoms and required further hospitalization. The father was incarcerated at the time of K.P.'s birth, having been charged with conspiracy to distribute methamphetamine. Upon removal, the DHHR obtained legal custody of the child, with physical custody given to a paternal aunt who resided in petitioners' home. The parents were adjudicated as abusing parents, after which the mother's parental rights were

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because both of the petitioners share the same initials, we will refer to them as R.P.-1 and R.P.-2, respectively, throughout the memorandum decision.

1

involuntarily terminated in May of 2019. The father voluntarily relinquished his parental rights in July of 2019.

The paternal aunt and the child continued to reside in petitioners' home until August of 2019, when the DHHR removed the child after the aunt was charged with two counts of delivery of a controlled substance. After K.P.'s removal from the aunt's custody, petitioners filed a motion to intervene in the proceedings, asserting that they should be considered for placement in lieu of foster care or adoption by a non-relative. In September of 2019, the circuit court granted petitioners' motion to intervene in the proceedings. Later that month, the circuit court held a hearing wherein the multidisciplinary team presented a status report stating that the paternal aunt was no longer an appropriate placement for the child due to her pending drug charges. The report also included full criminal background checks, which revealed that petitioner R.P.-2 had pleaded guilty in 2015 to a felony drug offense. Further, the report revealed that the felony drug offense involved a drug conspiracy which included the child's father and his paternal aunt. Shortly thereafter, petitioners filed a motion for supervised visitation with the child.

In December of 2019, the circuit court held a permanency hearing wherein the court clarified that it would rule on petitioners' motion for visitation as well as permanent placement. At the hearing, a DHHR caseworker testified that a home study had been performed shortly after the child's birth and petitioners' home was considered as an appropriate placement at the initial assessment, provided that the aunt was the caregiver. However, petitioners themselves were not considered for placement of the child after discovery of R.P.-2's previous drug conviction. The caseworker further testified that the only reason the child was ever in petitioners' residence was because the aunt had physical custody of the child, was living at the residence, and had been considered for placement prior to her recent drug charges. The guardian also testified that petitioners were not a suitable placement for the child, sharing the DHHR's concern about R.P.-2's prior drug conviction. Finally, a licensed psychologist testified that the child was suffering from extreme separation anxiety, having been removed from her biological home at a critical age. The psychologist noted that the child was still in the process of learning critical skills and her report added that "it would be detrimental . . . to interfere with her schedule and routine in any way." As a result, the psychologist testified that she did not recommend that petitioners have visitation with the child if they were not being considered for placement.

After hearing the evidence, the circuit court found that petitioners did not seek placement of the child until after she was removed from the aunt's custody and, even after moving to intervene, petitioners continued to argue in favor of the aunt regaining custody and placement, despite her pending drug charges. Further, the circuit court found that any presumption in favor of placement with petitioners had been rebutted based on R.P.-2's prior felony conviction and their "lack of sufficient judgment" to ensure the child's safety. The circuit court then found that it was not in the child's best interests to be permanently placed with petitioners. After finding petitioners were not suitable for permanent placement, the court found it was not in the child's best interests to grant visitation either, citing the psychologist's testimony and concerns about separation anxiety and interference with the child's routine. Accordingly, the circuit court denied petitioners' motion

for visitation, found they were not an appropriate placement for the child, and dismissed them from the case. It is from the January 16, 2020, order that petitioners appeal.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

In their sole assignment of error, petitioners argue that the circuit court erred in denying R.P.-1's[3] motion for visitation because there was no evidence adduced at the permanency hearing to prove that he was unsuitable or inappropriate for supervised visitations with the child. Essentially, petitioners argue that all of the circuit court's findings of fact and conclusions of law related to the criminal conduct of R.P.-2 and the child's aunt and the failure of the circuit court to make specific findings regarding R.P.-1 was error. In support, petitioners contend that visitation with R.P.-1 is in the child's best interests and would not interfere with the child's relationship with her foster parents. We disagree.

West Virginia Code § 48-10-501 provides that "[t]he circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." Further, this Court has held that

> "[a] trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren . . . shall give paramount consideration to the

---

[2]The parents' parental rights were terminated below. The permanency plan for the child is adoption in her current foster home.

[3]Despite the fact that petitioners filed a joint motion for visitation in the circuit court below and a joint appeal to this Court, petitioners assign as error only the denial of visitation with R.P.-1.

best interests of the grandchild or grandchildren involved." Syllabus point 1, in part, *In re the Petition of Nearhoof,* 178 W.Va. 359, 359 S.E.2d 587 (1987).

Syl. Pt. 3, *In re Samantha S.*, 222 W. Va. 517, 667 S.E.2d 573 (2008).

Here, the circuit court found that it would not be in the child's best interests to participate in visitation with petitioners because the child's therapist testified that the child was experiencing extreme separation anxiety, learning critical skills, and would be harmed by deviating from her schedule and routine. Additionally, the therapist testified that she did not recommend petitioners have visitation with the child if they were not being considered for placement. The circuit court also considered that R.P.-1 was unlikely to prevent the paternal aunt from visiting with the child, despite her own pending drug charges. In its order, the circuit court weighed the child's best interests according to West Virginia Code § 48-10-502, which provides factors to be considered by the circuit court in its decision whether to grant a grandparent visitation. These factors include as follows:

> (1) The age of the child;
> (2) The relationship between the child and the grandparent;
> (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
> (4) The time which has elapsed since the child last had contact with the grandparent;
> (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
> (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
> (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
> (8) The good faith of the grandparent in filing the motion or petition;
> (9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
> (10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
> (11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;
> (12) The preference of the parents with regard to the requested visitation; and
> (13) Any other factor relevant to the best interests of the child.

Contrary to petitioners' assertion, the circuit court considered these relevant factors as it pertains to both R.P.-1 and R.P.-2, and ultimately based its decision to deny visitation according to the child's best interests. At the time of the placement hearing, K.P. was just twelve months old and R.P.-1 provided no evidence to support any existing relationship between him and the child. Additionally, the child's father was incarcerated at her birth and the mother failed to participate in services to help her correct the conditions of abuse and neglect. As a result, the mother's parental

rights were terminated and the father voluntarily relinquished his parental rights. Further, K.P. has been placed with a foster family who desires to adopt her, and the child has been diagnosed with separation anxiety. As such, any visitation that would be granted to petitioners could exacerbate the child's condition, especially if visitation ceased. R.P.-1 also provided no evidence for his claim that he interacted with the child on a "daily basis" or otherwise "provided extensive childcare." Finally, neither of K.P.'s foster parents have expressed a preference for petitioners to be granted visitation.

Additionally, while R.P.-1 maintains that the circuit court failed to make specific findings or conclusions of law against him, the circuit court made several findings in its order which apply to both petitioners. The circuit court found that neither petitioner sought placement of the child until after she was removed from the aunt's custody. The circuit court noted that both petitioners continued to argue in favor of the aunt regaining custody of the child despite her pending drug charges. The DHHR and guardian objected to placing K.P. with petitioners. Although R.P.-1 is correct that the circuit court made additional factual findings against R.P.-2, this is, in part, because petitioner R.P.-1 chose not to testify, despite being present at the hearing. As such, petitioners are incorrect that the circuit court failed to make factual findings against both of them. Therefore, we find no error in the circuit court's decision to deny petitioners' motion for visitation.

Finally, we have previously held that

> [p]ursuant to W.Va. Code § 48–10–902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

Syl. Pt. 3, *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013). Because the permanency plan for the children is adoption by a nonrelative, the circuit court did not err in declining to award visitation to petitioner.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 16, 2020, dispositional order is hereby affirmed.

Affirmed.

---

[4]At the conclusion of their brief, petitioners assert that "[t]he notion that [R.P.-1] could or would not provide the appropriate care for K.P., as well as [the paternal aunt] or [R.P.-2], under supervision, would be violative of the Equal Protection Clause of the Fourteenth Amendment." However, as noted above, the entirety of petitioners' argument on appeal concerns the denial of visitation to R.P.-1 only. Accordingly, any allegation regarding the denial of supervised visitation to anyone other than R.P.-1 will not be addressed on appeal, given petitioners' failure to advance any argument in support for this issue. Additionally, given the analysis above concerning the circuit court's compliance with West Virginia Code § 48-10-502, we find that R.P.-1 cannot establish any violation of his right to equal protection.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison