744 S.E.2d 228

**In the Matter of HUNTER H.**

No. 12–0173.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 20, 2013.

Decided March 14, 2013.

Concurring in part and Dissenting in part
Opinion of Justice Workman
June 17, 2013.

Lisa M. Hawrot, Esquire, Spilman Thomas & Battle, PLLC, Jacob A. Manning, Esquire, Dinsmore & Shohl, LLP, Wheeling, WV, for Respondents, Jerry and Joyce W.

Robert G. McCoid, Esquire, McCamic, Sacco, & McCoid, PLLC, Wheeling, WV, for Petitioner, Donna D.

Patrick Morrisey, Esquire, Attorney General, Katherine M. Bond, Esquire, Assistant Attorney General, for DHHR.

**1.** While this case was pending before the Court, Patrick Morrisey was sworn into office as Attorney General for the State of West Virginia, replacing former Attorney General Darrell V. McGraw, Jr. *See* W.Va. R.App. P. 41(c).

**2.** We adhere to our usual practice in cases involving sensitive facts and do not refer to the parties using their full names. *See In re Clifford*

Joseph J. Moses, Esquire, Wheeling, WV, Guardian ad Litem for the Minor Child Hunter H.

KETCHUM, J.:

The Circuit Court of Ohio County has submitted a certified question asking whether a court may order continued visitation to a grandparent when the child is adopted by a non-relative. Our review of this question is controlled by the Grandparent Visitation Act, *W.Va.Code* § 48–10–101 *et seq.* [2001]. After thorough review, we conclude that the Grandparent Visitation Act does not provide for continued grandparent visitation after a child is adopted by a non-relative. Accordingly, we answer the certified question in the negative.[1]

## I. Factual & Procedural Background

This matter was previously before the Court in *In re Hunter H.*, 227 W.Va. 699, 715 S.E.2d 397 (2011). Hunter[2] was approximately 17 months old at the time an abuse and neglect petition was filed.[3] Both of Hunter's biological parents had their parental rights terminated. Hunter was initially placed with his maternal grandmother, petitioner Donna D. ("grandmother" or "Grandmother Donna"). Hunter was removed from his grandmother's house shortly after this placement due to concerns about Grandmother Donna's then-husband. After being removed from his grandmother's house, Hunter was placed with a foster family, respondents Joyce and Jerry W., where he resided from August 2007 through August 2010. Hunter's guardian ad litem commented on Hunter's time with his foster family, stating that Hunter "was thriving with his foster family, identified his foster parents as 'mom' and 'dad' and identified his foster parents' daughter as 'sis.'" *Hunter H.*, 227 W.Va. at 702, 715 S.E.2d at 400.

*K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005). Hunter has been adopted by Joyce and Jerry W., and we will refer to him in this opinion as "Hunter."

**3.** Because the facts are extensively set forth in *Hunter H., supra,* we will provide only a brief summary of that case and our ruling therein.

After the Department of Health and Human Resources ("DHHR") conducted a successful home study of Grandmother Donna's residence, she petitioned the circuit court for permanent custody of Hunter. In August of 2010, the circuit court ordered that Hunter be removed from his foster family, over their objection, and that he be permanently placed with Grandmother Donna. Joyce and Jerry W. appealed and this Court reversed the circuit court's ruling, finding that the circuit court elevated the grandparent preference contained in *W.Va.Code* § 49–3–1(a)(3) [2001] over the best interest of the child. The Court ordered that Hunter be transitioned back to Joyce and Jerry W. for permanent placement.

Hunter was returned to Joyce and Jerry W.'s custody on November 1, 2011. Joyce and Jerry W. agreed to let Grandmother Donna have four-hour visits with Hunter twice a month. They also allowed Grandmother Donna to call Hunter on the telephone twice a week. Grandmother Donna was not satisfied with the amount of visitation she was receiving and petitioned the circuit court for additional contact with Hunter. Over Joyce and Jerry W.'s objection, the circuit court entered an order on January 20, 2012, granting Grandmother Donna overnight visitation with Hunter every other weekend.[4]

Joyce and Jerry W. were in the middle of the six-month adoption waiting period when this order was entered.[5] After the entry of this order, the issue arose as to whether a grandmother could continue to receive visitation after a child has been adopted by a non-relative. Grandmother Donna conceded that "[w]ithout question, *W.Va.Code* § 48–22–703 entitles an adopting parent to unfettered rights as a parent and generally precludes grandparents from exercising visitation pursuant to . . . the Grandparent Visitation Act." She went on to argue, however, that under a best interest of the child analysis, she was entitled to receive post-adoption visitation with Hunter. Joyce and Jerry W. argued that the Legislature plainly contemplated this precise situation in *W.Va.Code* § 48–10–902 [2001], which states,

> If a child who is subject to a grandparent visitation order under this article is later adopted, the order for grandparent visitation is automatically vacated when the order for adoption is entered, unless the adopting parent is a stepparent, grandparent or other relative of the child.

Joyce and Jerry W. asked the circuit court to apply the statute and deny Grandmother Donna's request for continued visitation. The circuit court thereafter submitted the following certified question to this Court:

> Does a child's right to continued association with individuals with whom he has formed a close emotional bond, i.e. his maternal grandmother, continue post-adoption by non-relatives, provided that a determination is made that such continued association·is in the best interests of the child?

The circuit court answered the certified question in the affirmative. This Court accepted the certified question for review.

## II. Standard of Review

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). Following this standard, we proceed to consider the certified question presented.

## III. Analysis

■ The issue before us is whether a court may order continued visitation to a grandparent when a child is adopted by a non-relative. Our resolution of this issue is controlled by the Grandparent Visitation Act set forth in *W.Va.Code* § 48–10–101 *et seq.* [2001]. The Grandparent Visitation Act is the exclusive means through which a grandparent may seek visitation. *W.Va.Code*

---

**4.** The order states that "the grandmother shall visit with the child every other weekend" from 10:30 a.m. on Saturday until 3:00 p.m. on Sunday.

**5.** Hunter was adopted by Joyce and Jerry W. in August of 2012. The adoption order states that the grandparent visitation that was in place prior to the adoption will continue until this Court resolves the instant certified question.

§ 48–10–102 states, "It is the express intent of the Legislature that the provisions for grandparent visitation that are set forth in this article are exclusive." In *State ex rel. Brandon L. v. Moats,* 209 W.Va. 752, 755, 551 S.E.2d 674, 677 (2001), this Court stated that the "grandparent act, by its own express declaration, is the exclusive statutory scheme for resolving issues of grandparent visitation."

The Legislature expressly incorporated the best interests of the child considerations into the Grandparent Visitation Act. *W.Va.Code* § 48–10–101 states

[t]he Legislature finds that circumstances arise where it is appropriate for circuit courts of this state to order that grandparents of minor children may exercise visitation with their grandchildren. The Legislature further finds that in such situations, as in all situations involving children, the best interests of the child or children are the paramount consideration.

Further, *W.Va.Code* § 48–10–501 provides that "[t]he circuit court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." *W.Va.Code* § 48–10–502 sets forth a list of thirteen factors to be considered in making a determination regarding grandparent visitation. These factors include "[a]ny other factor relevant to the best interests of the child."

Having established that the Grandparent Visitation Act 1) is the exclusive means through which a grandparent can seek visitation and 2) expressly incorporates the best interests of the child, we turn to *W.Va. Code* § 48–10–902, *supra.* This statute, entitled "Effect of adoption of the child," states that a grandparent's visitation rights are automatically vacated when a child is adopted by a non-relative. Importantly, the Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative. In the case *sub judice,* Hunter was adopted by his non-relative foster parents and Grandmother Donna seeks continuing visitation.

This Court addressed the issue of grandparents' ability to seek visitation under *W.Va.Code* § 48–10–902 in *Brandon L., supra.* In *Brandon L.,* the Court recognized that *W.Va.Code* § 48–10–902 allows a paternal grandparent to petition for visitation with a biological grandchild after the child was adopted by a stepparent. The Court recognized that the Legislature drew a distinction between adoptions that occur within the family and those that occur outside of the family,

[T]he Legislature draws a distinction concerning issues of visitation depending on the type of adoption involved. Section 9(b) [now *W.Va.Code* § 48–10–902] makes clear that the Legislature both contemplated and approved the continuation of visitation rights following an adoption in those instances where the adoption occurs within the immediate family, as opposed to outside the family. [footnote omitted] In providing that visitation rights which are established preadoption are not to be affected by an adoption that occurs when the adopting parent is a stepparent, grandparent, or other relative of the child, the Legislature was both recognizing the difference between adoptions that occur within and without the immediate family and establishing a preference of continuing established relationships between children and their grandparents in the former instance. *Understandably, adoptions that take place outside the immediate family do not permit, nor perhaps should they, the continuation of visitation rights that were granted pre-adoption.*

*Brandon L.,* 209 W.Va. at 757, 551 S.E.2d at 679. (Emphasis added.) The Court in *Brandon L.* reiterated its finding that the Legislature distinguishes between adoptions that occur inside and outside of the family stating, "Adoptions that take place outside the immediate family are clearly beyond the scope of this opinion as the Legislature has made clear that visitation should not be continued in such instances." *Id.,* 209 W.Va. at 765 n. 21, 551 S.E.2d at 687 n. 21.

This Court again recognized the distinction between adoptions that occur inside and outside of the family in *In re Grandparent*

*Visitation of Cathy L. (R.) M. v. Mark Brent R.,* 217 W.Va. 319, 617 S.E.2d 866 (2005). Like *Brandon L.,* the Court in *Cathy L.* considered whether biological grandparents should be granted visitation following an adoption that occurred within the family. The Court in *Cathy L.* discussed *W.Va.Code* § 48–10–902 and noted that

> the Legislature distinguishes between adoptions occurring within the family and those occurring outside the family with respect to the appropriateness of continued visitation between a grandparent and a grandchild who has been adopted.

*Id.,* 217 at 324, 617 S.E.2d at 871. Though the child in *Cathy L.* was adopted within the family, there was no visitation order in place prior to the adoption. The Court discussed whether a grandparent visitation order had to be in place prior to an adoption occurring within the family for a grandparent to receive continuing visitation under *W.Va.Code* § 48–10–902. In answering that question, the Court stated

> [w]hile the child in the present case was not subject to a grandparent visitation order prior to her adoption, and therefore the statute does not definitely resolve this issue, the statute does provide guidance regarding the legislative conception regarding the circumstances under which adoption should sever all visitation between adopted children and their biological grandparents.

*Id.,* 217 at 324, 617 S.E.2d at 871. The "legislative conception regarding the circumstances under which adoption should sever all visitation between adopted children and their biological grandparents," referred to by *Cathy L.,* is the situation presently before us—an adoption that occurs outside of the family.

■ The legislative directive that grandparent visitation should be severed when a child is adopted by a non-relative is consistent with the longstanding law of this state recognizing the ultimate effect of an adoption proceeding: a termination of previous familial relationships and the creation of new familial relationships. In this regard, the Legislature has specifically stated that

> [u]pon the entry of such order of adoption, any person previously entitled to parental rights, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such person, parent or parents, except any such person or parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of inheritance from or through the adopted child under the statutes of descent and distribution of this state, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such person, parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

*W.Va.Code* § 48–22–703(a) [2001].

■ Additionally, the legislative directive severing grandparent visitation when a child is adopted by a non-relative is consistent with the goal of creating finality in adoption proceedings. "[T]he central aim of adoption is finality, finality in the severance of pre-existing relationships and finality in the creation of new adoptive relationships, which breeds certainty for adopted children and their adoptive parents, alike, in their new adoptive relationship." *Cathy L.,* 217 W.Va. at 328, 617 S.E.2d at 875 (Davis, J., concurring) (citation omitted). *See also State ex rel. Smith v. Abbot,* 187 W.Va. 261, 266, 418 S.E.2d 575, 580 (1992) ("Finality is of the utmost importance in an adoption.").

Courts outside of our jurisdiction have considered this question and held that grandparent visitation should be severed when a child is adopted by a non-relative. For instance, in *In re Adoption of Child by W.P.,* 163 N.J. 158, 163, 748 A.2d 515, 518 (2000), the New Jersey Supreme Court found an "inherent conflict" between grandparent visitation and adoption, and held that the "overriding public

policy" regarding adoptions precluded application of the grandparent visitation statutes in cases of adoption by "nonrelative adoptive parents." The court found that the grandparent visitation statute "must not be applied because court-enforced visitation by biological grandparents would discourage—if not prevent [6]-adoption." 163 N.J. at 173–74, 748 A.2d at 524. Further, "[a]n adoptive family must be given the right to grow and develop as an autonomous family, and must not be tied to the very relationship that put the child in the position of being adopted." 163 N.J. at 175, 748 A.2d at 525.

Similarly, the Wyoming Supreme Court held that paternal grandparents had no right to visitation with a grandchild after the child was adopted by his maternal grandparents. In *Hede v. Gilstrap*, 107 P.3d 158 (2005), the Wyoming Supreme Court discussed a number of cases in which state courts have considered grandparent visitation rights following a grandchild's adoption.[7] After reviewing these cases, the court found that "the only universal lesson to be learned from these cases is that both adoption and grandparent visitation are purely statutory creatures and, as such, their limits are to be found within the statutes." 107

P.3d at 166. In concluding that the paternal grandparents did not have the right to continued visitation, the court observed, "[i]ndeed, the statute reveals that the legislature knew how to make an exception to the severing effect of adoption because it did so for stepparent adoptions." *Id.* at 175. In the present case, *W.Va.Code* § 48–10–902 reveals that our Legislature also knew how to make an exception to the severing effect of adoption because it did so in cases where a child is adopted by his or her stepparents, grandparents or other relatives. Our Grandparent Visitation Act does not make such an exception when a child is adopted by a non-relative.

■ Grandmother Donna states that her request for continued visitation should be considered outside of the Grandparent Visitation Act. She argues that this Court should consider the issue *solely* through the prism of the best interest of the child.[8] This Court has consistently recognized that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989).

---

**6.** We are also cognizant of the chilling effect that could occur if the Legislature allowed former family members to seek continuing visitation with a child adopted by a non-relative. In the present case, Hunter's grandmother was awarded overnight visitation with him every other weekend. If Hunter's other grandparents or relatives petitioned the circuit court and demonstrated a "close emotional bond" with Hunter, the circuit court would be obliged to award those family members additional visitation based on its affirmative answer to the certified question. Further, if the employer of either of Hunter's adoptive parents transferred their job to another state, they arguably would not be able to move because of the overnight visitation with Grandmother Donna ordered by the circuit court. This restriction could indeed create a chilling effect on potential adoptive parents' willingness to adopt a child in this state.

**7.** Cases considered by the court in *Hede v. Gilstrap, supra,* include the following: *Ex parte D.W.,* 835 So.2d 186, 189–91 (Ala.2002) (statute specifically allows visitation after intrafamily adoption); *In re Petition of R.A.,* 66 P.3d 146, 150–51 (Colo.App.2002) (statutory scheme is constitutional that allows post-adoption grandparent visitation where grandchild's parent has died, but not where parental rights have been terminated); *Sowers v. Tsamolias,* 262 Kan. 717, 718–

19, 941 P.2d 949, 950–51 (1997) (adoption law has priority over grandparent visitation statute so that biological grandparent has no standing to petition for visitation after stranger adoption); *Hicks v. Enlow,* 764 S.W.2d 68, 71–73 (Ky.1989) (grandparent visitation rights, by statute, do not extend to any but stepparent adoption); *In Interest of A.C.,* 428 N.W.2d 297, 300 (Iowa 1988) (stepparent adoption is only statutory exception to rule against post-adoption grandparent visitation); and *Ramey v. Thomas,* 483 So.2d 747, 747 (Fla.App.1986) (adoption statute that terminates legal relationships of natural parents and former relatives does not allow for post-adoption grandparent visitation).

**8.** Grandmother Donna's brief states that she is not seeking visitation with Hunter "solely based upon any blood tie.... Rather, she seeks continued contact with Hunter based upon the notion that it is in Hunter's best interest that such continued association continue[.]" We note that while Grandmother Donna analogizes her relationship with Hunter to a number of our previous best interest of the child cases, she has cited no statute or case from this Court permitting a grandparent to seek post-adoption visitation with a child who has been adopted by a non-relative.

However, we decline Grandmother Donna's invitation to consider her request for continued visitation with Hunter outside of the Grandparent Visitation Act because the Act, "by its own express declaration, is the exclusive statutory scheme for resolving issues of grandparent visitation." *Brandon L.*, 209 W.Va. at 755, 551 S.E.2d at 677. Furthermore, we need not conduct an independent best interest of the child analysis because the Legislature expressly incorporated this analysis into the Act, stating "the best interests of the child or children are the paramount consideration." *W.Va.Code* § 48–10–101. After considering the best interests of the child, the Grandparent Visitation Act excludes grandparent visitation with a child who has been adopted by a non-relative.

■ Additionally, Grandmother Donna's argument that post-adoption visitation may be ordered *solely* on a best interest of the child basis is at odds with the United States Supreme Court's ruling in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In *Troxel*, the Supreme Court examined a Washington state statute providing that any person could petition for visitation with a child at any time, thus allowing a court to order visitation rights for any person when the court found that the visitation served the best interests of the child. The Supreme Court held that this statute violated the substantive due process rights of

a mother who objected to the lower court's order permitting the paternal grandparents to exercise visitation rights following the death of the children's father. 530 U.S. at 61, 120 S.Ct. 2054. The Court observed that the Washington statute did not accord proper deference to "a parent's decision that visitation would not be in the child's best interest." *Id.* at 67, 120 S.Ct. 2054. "The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 69, 120 S.Ct. 2054. This Court discussed *Troxel* in *Cathy L.* and found that

> *Troxel* instructs that *a judicial determination regarding whether grandparent visitation rights are appropriate may not be premised solely on the best interests of the child analysis.* It must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis.

*Cathy L.*, 217 W.Va. at 327–28, 617 S.E.2d at 874–75.[9] (Emphasis added.)

Based on *Troxel*, the Grandparent Visitation Act, and this Court's ruling in *Cathy L.*, we find no merit in Grandmother Donna's argument that post-adoption visitation may be granted *solely* on a best interest of the child basis.[10] We therefore answer the certi-

9. *Cathy L.* dealt with a grandparent seeking post-adoption visitation following an adoption that occurred within the family. *Cathy L.'s* instruction that a court must consider the best interests of the child and give significant weight to the parents' preference, is applicable in cases where a child has been adopted within the family pursuant to *W.Va.Code* § 48–10–902. In cases where the adoption occurs outside of the family, the Legislature, having incorporated its own best interests of the child analysis into the Grandparent Visitation Act, has determined that visitation should not be continued.

When adoptions occur within the family, the showing a grandparent must make to overcome a fit parent's preference regarding the care and custody of their children is substantial. In *Cathy L.*, this Court reversed a family court's grant of grandparent visitation following an adoption that occurred within the family because "[t]he preference of the parents were not adequately considered by the family court, and proper weight was not given to those preferences." *Cathy L.*, 217

W.Va. at 328, 617 S.E.2d at 875. Similarly, the Supreme Court stated in *Troxel* that

> so long as a parent adequately cares for his or her children (i.e. is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

530 U.S. at 68–69.

10. Our ruling in the instant matter casts no doubt on our previous best interest of the child cases. We simply note that the present case is distinguishable from these prior cases. For instance, in *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996), this Court concluded that a child had a right to continued association with his foster parents after being returned to his natural parents, if the contact was in the child's best interest. *Jonathan G.* did not deal with grandparent visitation rights after a child has been adopted by a non-relative. In *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692

fied question in the negative and hold that the Grandparent Visitation Act, *W.Va.Code* § 48–10–101 *et seq.*, is the exclusive means through which a grandparent may seek visitation with a grandchild. The best interests of the child are expressly incorporated into the Grandparent Visitation Act in *W.Va.Code* §§ 48–10–101, 48–10–501, and 48–10–502. Pursuant to *W.Va.Code* § 48–10–902, the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

Because we answer the certified question in the negative, we hereby vacate the circuit court's January 20, 2012, order granting visitation to Grandmother Donna.

## IV. Conclusion

For the reasons explained in the body of this opinion, we answer the certified question in the negative.

Certified Question Answered.

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's determination that, under the circumstances of this case, continued visitation between the grandmother and the child was not appropriate. However, I dissent from the majority's reasoning because it shows a complete lack of understanding of our existing body of law concerning the rights of children to continued association.

While the majority gives lip service to the viability of the significant body of law that this Court has developed on a child's right to continued association, it effectively ignores that body of law in the analysis of this case.

It is important to note that the certified question was very direct:

*Does a child's right to continued association* with individuals with whom he has formed a close emotional bond, i.e. his maternal grandmother, continue post-adoption by non-relatives, provided that a determination is made that such continued association is in the best interests of the child?

(Emphasis added). Notwithstanding the question posed by the circuit court, the majority simply ignores the question.

I dissent from the majority's absolute reliance on the Grandparent Visitation Act ("the Act"), West Virginia Code §§ 48–10–101 to –1201 (2009). Such slavish reliance solely on the foregoing statutory scheme is done with full abandonment of the well-established law by this Court concerning the child's right to continued association. Succinctly stated, the majority opinion only addresses the rights of grandparents as set forth in the Act and turns a blind eye to the rights of the child-rights that are wholly left unaddressed by Legislature in the provisions of the Act and now by the majority of this Court.

While the majority attempts to factually distinguish the instant case from some of the Court's earlier decisions involving continued association, they ignore an important case wherein the rights of children to continued association first emerged. In *Honaker v. Burnside,* 182 W.Va. 448, 388 S.E.2d 322 (1989), the natural father was challenging a six-month transition period in connection with the restoration of full custody of his child back to him. The child had been in the custody of her mother with reasonable visitation by the natural father. *Id.* at 449–50, 388 S.E.2d at 323. The child's mother remarried and the child lived during this marriage with her mother, stepfather and half-brother. The natural father, however, maintained his relationship with his daughter. *Id.* There was no contention or evidence that the natural father was unfit (or had abandoned his parental rights or responsibilities). *Id.* But

(1995), this Court stated that visitation rights may be granted to a parent whose parental rights have been terminated due to abuse or neglect proceedings. *Christina L.* did not deal with grandparent visitation rights after a child has been adopted by a non-relative. In *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991),

this Court stated that circuit courts should consider whether continued association with siblings in other placements following an abuse and neglect proceeding would be in a child's best interest. *James M.* did not deal with grandparent visitation rights after a child has been adopted by a non-relative.

after the child's natural mother was killed in an automobile accident, pursuant to her will, she named the child's stepfather as guardian and the natural father sought custody of his daughter. *Id.* at 450, 388 S.E.2d at 323–24.

After the court set a six-month transition period, the father filed a petition for writ of mandamus and/or prohibition with this Court seeking immediate custody. This Court determined the natural father had a right to custody of his child, but also considered whether it was in the child's best interests to have a continued relationship with her stepfather and half-brother. The Court stated that

> [u]ndoubtedly, ... [the child's] best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life. Clearly, "these interests are interests of the child and not of the parent. Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital." "Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus,* 581 P.2d 487, 488 (Okla.Ct.App. 1978).

*Honaker,* 182 W.Va. at 452, 388 S.E.2d at 325 (footnotes omitted). Additionally, the Court stated:

> The best interests of the child concept with regard to visitation emerges from the reality that "[t]he modern child is considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights...." Another concern is "the need for stability in the child's life.... [T]ermination of visitation with individuals to whom the child was close would contribute to instability rather than provide stability.["]

*Id.,* 388 S.E.2d at 326 (footnotes omitted). Thus, the Court held that even though the custody of the child should be with the natural parent absent proof of abandonment, misconduct or neglect, "the child may have a right to continued visitation rights with the stepparent or half-sibling." *Id.* at 449, 388 S.E.2d at 323, Syl. Pt. 2, in part.

Thus, the Court upheld the right of continued association of a child with a step-father (not even a blood relative), even in the face of the very strong parental right of a biological father.

Thereafter, in *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991), the Court held in syllabus point four that

> [i]n cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.

*Id.* at 649, 408 S.E.2d at 401, Syl. Pt. 4. In so holding, the Court acknowledged the important concept that "[t]rends both in social work and the law relating to child placement indicate an increased awareness of children's rights to such continued association with siblings and other meaningful figures." *Id.* at 658, 408 S.E.2d at 410.

The Court further explained a child's right to continued association in *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), a case which included not only the right to continued association between siblings, but also a child's right to a continued association with his mother post-termination of the mother's parental rights. We held in *Christina L.* that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. *Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request.*

*The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.*

*Id.* at 448, 460 S.E.2d at 694, Syl. Pt. 5 (emphasis added). Thus, once again in *Christina L.*, like in *Honaker*, we reemphasized the importance of the visitation working in favor of the child's well-being and best interests, thereby implicitly recognizing that a court has an obligation to facilitate a child's right to human relationship when it is in his best interests.

Another case that is analogous to the instant case was *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996). In *Jonathan G.*, the child was ultimately returned to the legal custody of his natural parents after the child had been in the care and custody of foster parents for years. Upon the return of the child to his natural parents, the circuit court determined that it had no basis upon which to order continued association between the foster parents and Jonathon G. *Id.* at 734, 482 S.E.2d at 911. This Court disagreed with the circuit court and remanded the case for proceedings to consider whether continued association between the child and his foster parents was in the child's best interests. *Id.* at 736, 482 S.E.2d at 913.

We stated in *Jonathan G.*:

The guiding principle relied upon by this Court in recommending consideration of continued contact with a child is whether a strong emotional bond exists between the child and an individual such that cessation in contact might be harmful to the child, both in its transitory period of adjusting to a new custodial arrangement and in its long-term emotional development. We find no reason to except individuals, like the Stems, who have had a successful long-term relationship with a foster child and have been found, in fact, to be psychological parents to Jonathan G., from consideration for such continued association.

*Id.* at 735, 482 S.E.2d at 912. Additionally, we recognized that

while "[t]here is little uniformity in the case law concerning nonparental visitation over the objection of a biological or adoptive parent, ... some courts have observed

a judicial trend toward considering or allowing visitation to nonparents who have a parent-like relationship with the child *if visitation would be in the best interest of the child.*"

*Id.* (quoting in *In re Custody of H.S.H.–K.*, 193 Wis.2d 649, 533 N.W.2d 419, 435 n. 37 (1995), *cert. denied sub nom. Knott v. Holtzman*, 516 U.S. 975, 116 S.Ct. 475, 133 L.Ed.2d 404(1995)) (emphasis added).

Thus, we held in syllabus point eleven of *Jonathon G.* that "[a] child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child." *Jonathan G.*, 198 W.Va. at 720, 482 S.E.2d at 897, Syl. Pt. 11; *see also In re Clifford K.*, 217 W.Va. 625, 646, 619 S.E.2d 138, 159 (2005) ("We would be remiss if we did not also reiterate that '[a] child has rights, too, some of which are of a constitutional magnitude.' *Lemley [v. Barr]*, 176 W.Va. [378] at 386, 343 S.E.2d [101] at 109 [ (1986) ] (internal quotations and citations omitted). Among these, '[a] child has a right to continued association with individuals with whom he has formed a close emotional bond ... provided that a determination is made that such continued contact is in the best interests of the child.' Syl. pt. 11, in part, *In re Jonathan*, 198 W.Va. 716, 482 S.E.2d 893. *Accord Snyder v. Scheerer*, 190 W.Va. [64] at 72, 436 S.E.2d [299] at 307 [ (1993) ] (recognizing 'the right of a child to continued association with those individuals to whom the child has formed an attachment'). In this regard, '[t]he length of time that the child has remained with [such individual(s) ] is a significant factor to consider in determining this issue.' *In re Jonathan*, 198 W.Va. at 736 n. 41, 482 S.E.2d at 913 n. 41.").

This Court has clearly held that, even when biological parental rights are involved, a *child's right* to continued relationship with non-parents can prevail.

Notwithstanding the foregoing precedent set forth by this Court regarding a child's right to continued association with individuals with whom the child has significant,

strong emotional bonds, the majority, with its slavish devotion only to the law of the statutes, holds in syllabus points one, two and three as follows:

The Grandparent Visitation Act, *W. Va. Code* § 48–10–101 *et seq.* [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild.

The best interests of the child are expressly incorporated into the Grandparent Visitation Act in *W. Va. Code* §§ 48–10–101, 48–10–501, and 48–10–502 [2001].

Pursuant to *W. Va. Code* § 48–10–902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

While there is no question that these three new syllabus points address the rights of the grandparent, the majority's decision is devoid of any significant discussion about the rights of a child.

Finally, while the majority holds in the third new syllabus point that the visitation rights of grandparents are automatically vacated after a child is adopted by a non-relative pursuant to the provisions of West Virginia Code § 48–10–902, neither the majority, nor the Legislature, has addressed the rights of the child. Despite what may happen to the rights of the grandparents in this case, the child, nevertheless, has a continued right to association with individuals with whom the child has strong emotional bonds so long as that continued association is in the child's best interests and is not detrimental to the parent-child relationship.

Let there be no mistake that upholding a child's right to continued association does not always mean always granting the visitation sought. In the instant case, while the guardian ad litem argued that the child desired continued association with his grandmother, the facts did not warrant the circuit court upholding the continued association as in the child's best interests. There was information offered by the guardian ad litem that demonstrated that the grandmother was interfering in a manner that was detrimental to the child's well-being.[1] This was demonstrated by the grandmother insisting on overnight visitation despite the child being sick and on medication. There was also information that the grandmother's attorney was demanding that the adoptive parents provide a physician's order showing the diagnosis, as well as the prescription. Further, there was indication that the grandmother was allowing the child to visit the child's biological mother, whose rights had been terminated. This

---

1. Visitation in conjunction with continued association with a child is analogous to shared parenting insofar as it necessitates a high degree of cooperation between the parties involved in order to be successful. *See generally* W. Va.Code §§ 48–9–101 to –604 (2009 & Supp.2012). Included in this statutory scheme relating to the allocation of custodial responsibility and decision making responsibility of children is certain criteria that focuses upon the level of cooperation necessary to serve the best interests of the child. Specially, West Virginia Code § 48–9–102(a) provides:

(a)The primary objective of this article is to serve the child's best interests, by facilitating:
(1) Stability of the child;
(2) Parental planning and agreement about the child's custodial arrangements and upbringing;
(3) Continuity of existing parent-child attachments;
(4) Meaningful contact between a child and each parent;
(5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
(6) Security from exposure to physical or emotional harm; and
(7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

*Id.; see Tevya W. v. Elias Trad V.,* 227 W.Va. 618, 623, 712 S.E.2d 786, 791 (2011) ("[T]he paramount consideration must be the best interests of the child. It is the 'public policy of this State to assure that the best interest of children is the court's primary concern in allocating custodial and decision-making responsibilities between parents who do not live together.' *Id.* at § 48–9–101(b)."); *Skidmore v. Rogers,* 229 W.Va. 13, 19, 725 S.E.2d 182, 188 (2011)(recognizing that "the Legislature set forth several overarching goals for courts to follow in determining custody arrangements[ ]" by enacting West Virginia Code § 48–9–102).

conduct on the grandmother's part not only circumvented the wishes of the parents, but also violated the circuit court's order terminating the biological mother's parental rights. This pattern of behavior obviously indicated a contentious relationship between parents and the grandmother which was not in the child's best interests. Thus, in the analytical framework of the law relative to a child's right to continued association the child's best interests must remain the polar star and the grandmother could not prevail.

For the foregoing reasons, I concur with the result reached by the majority insofar as it disallows visitation with the grandparent in this case. I dissent, however, from reasoning used by the majority in reaching its result.