# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 8, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT D. AND SHELBY D.,**
**Petitioners Below, Petitioners**

**vs.) No. 23-ICA-316**　　　(Fam. Ct. Monroe Cnty. No. FC-32-2022-D-51)

**BRIAN M. AND ASHLEY M.,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioners Robert D. and Shelby D.[1] appeal the Family Court of Monroe County's June 21, 2023, order granting Respondents' motion to dismiss. Respondents Brian M. and Ashley M. filed a response in favor of the Family Court's decision.[2] Petitioners filed a reply.[3] The issue on appeal is whether the Family Court erred in granting Brian M. and Ashley M.'s motion to dismiss.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Petitioners are represented by John H. Bryan, Esq., and E. Raeann Osborne, Esq. Respondents are represented by Anthony R. Veneri, Esq.

[3] On January 23, 2024, Petitioners Robert D. and Shelby D. also filed a motion for leave to file a supplemental brief, which can more aptly be described as a notice of additional authority. Respondents Brian M. and Ashley M. filed a response opposing the motion. This Court granted the motion on January 26, 2024. In their motion, Petitioners Robert D. and Shelby D. asked this Court to consider the recent decision, *In re Adoption of L.A.*, No. 22-0254, 2023 WL 7403556 (W. Va. Nov. 8, 2023) (memorandum decision), which notes that a circuit court must consider the factors outlined in the Grandparent Visitation Act when weighing a petition for grandparent visitation. Upon review, we find this case is inapplicable to the case at bar. As discussed more thoroughly below, Petitioners Robert D. and Shelby D. are unable to petition for grandparent visitation through the Grandparent Visitation Act due to the fact that the children have been adopted by non-relatives. *See* Syl. Pt. 3, *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013) ("The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners Robert D. and Shelby D. are the biological grandparents and former adoptive parents of the children at issue in the underlying adoption order. Sometime after their adoption of the children, Robert D. and Shelby D. sought new, younger adoptive parents for the children due to their advanced age. Respondents Brian M. and Ashley M., who are non-relatives, agreed to adopt the children. Counsel for Brian M. and Ashley M. prepared "Relinquishment and Consent" forms (hereinafter "consent forms"), which were signed by Robert D. and Shelby D. In the forms, Robert D. and Shelby D. acknowledged that they were voluntarily surrendering all parental rights to the children and believed the relinquishment and consent to adoption to be in the best interests of the children. Important to the issue on appeal, paragraph 4 of the consent stated as follows:

> that we each state that I fully understand that by this relinquishment and consent, among the rights I will be relinquishing are any right of inheritance, all parental rights forever, as the parties have agreed that the right to visit or communicate with the said child has been agreed to by the adopting parents, as this is an open adoption, and we will continue to be grandparental figures . . . .

Neither Brian M. nor Ashley M. signed the form.

On July 3, 2017, the Circuit Court of Monroe County issued an Adoption Order, in which Respondents Brian M. and Ashley M. adopted one of the children, A.M. The Adoption Order contained only one sentence referencing Petitioners' consent forms:

> And the Court, after inspecting the said petition and file, finds that there was no need for an additional home study to be completed as the child would remain in the petitioners' home regardless of this proceeding and which home is in this Court's jurisdiction, and the relinquishment and consent to adoption executed by the parents of the male child, Robert [D.] and Shelby [D.], which was executed on April 10, 2017, and is filed with this Court.

On November 8, 2018, the Circuit Court of Monroe County issued a second Adoption Order, in which Brian M. and Ashley M. adopted the second child, I.M. The adoption orders are nearly identical, and the Adoption Order for I.M. contained the same singular reference to the consent forms.

On June 29, 2022, Petitioners Robert D. and Shelby D. filed a Petition for Grandparent Visitation with the Family Court. Robert D. and Shelby D. alleged that they agreed to Respondents Brian M. and Ashley M.'s adoption of their children based on an understanding and promise from Brian M. and Ashley M. that Robert D. and Shelby D. would be able to continue to play a fundamental role in the children's lives. Robert D. and Shelby D. alleged that, after the adoption, Brian M. and Ashley M. began to restrict their contact with the children and Robert D. and Shelby D. asked the Family Court to grant specific periods of visitation, which they alleged were in the best interests of the children.

Respondents Brian M. and Ashley M. filed an answer and affirmative defenses on August 10, 2022, and filed a motion to dismiss on February 13, 2023. Brian M. and Ashley M. argued that Robert D. and Shelby D.'s Petition for Grandparent Visitation could not be granted because the same is prohibited by West Virginia Code §48-10-902 (2001)[4] and the Supreme Court of Appeals of West Virginia's ("SCAWV") holding in *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013).[5] Robert D. and Shelby D. filed a response to the motion to dismiss on February 27, 2023. Brian M. and Ashley M. filed a reply.

By order dated June 21, 2023, the Family Court granted Respondents Brian M. and Ashley M.'s motion to dismiss. The Family Court found that the relevant policy regarding grandparent visitation in West Virginia is governed by West Virginia Code § 48-10-902 and that, because Brian M. and Ashley M. are the adoptive parents of the children and are non-relatives, Robert D. and Shelby D. cannot seek grandparent visitation. This appeal followed.

Our standard of review is as follows:

---

[4] West Virginia Code § 48-10-902 provides: "If a child who is subject to a grandparent visitation order under this article is later adopted, the order for grandparent visitation is automatically vacated when the order for adoption is entered, unless the adopting parent is a stepparent, grandparent or other relative of the child."

[5] Pursuant to Syllabus Point 3 of *In re Hunter H.*,

> Pursuant to W. Va. Code § 48-10-902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

*Id.* at 118, 744 S.E.2d at 229.

"In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W.Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, Petitioners Robert D. and Shelby D. argue that the Family Court erred in failing to recognize that the consent forms were enforceable agreements incorporated into the Adoption Orders which allowed for continued visitation between them and the children following the adoption. Robert D. and Shelby D. contend that the consent forms, particularly paragraph 4, are binding and carve out very clear grandparent visitation/communication rights that were intended to survive the adoption order. Robert D. and Shelby D. point out that counsel for Brian M. and Ashley M. authored the consent forms and claim that they were induced to sign the forms based upon promises of continued visitation with the children. According to Robert D. and Shelby D., the Family Court erred in dismissing the case based solely on the provisions of the Grandparent Visitation Act and, rather, should have considered whether an enforceable agreement existed. Robert D. and Shelby D. call into question the validity of the adoption order, arguing fraudulent inducement. Lastly, Robert D. and Shelby D. claim that the Family Court erred in failing to include specific findings of fact and conclusions of law in its final order as required by West Virginia Code § 48-10-801 (2001).[6]

Upon our review, we find no error in the Family Court's decision to grant Respondents Brian M. and Ashley M.'s motion to dismiss. The Family Court properly found that Petitioners Robert D. and Shelby D. were not permitted to petition for visitation under the Grandparent Visitation Act. The Grandparent Visitation Act is the exclusive means through which a grandparent may seek visitation with a grandchild. *Hunter H.*, 231 W. Va. at 118, 744 S.E.2d at 229, syl. pt. 1. However, the Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative. *Id.* at syl. pt. 3. Accordingly, because Brian M. and Ashley M. are non-relatives who adopted the children, the only way for Robert D. and Shelby D. to prevail in this appeal is for them to demonstrate that they had an agreement with Brian M. and Ashley M. for continued post-adoption visitation. West Virginia Code § 48-22-704(e) (2001) contemplates that an adoption order may contain an

---

[6] Pursuant to West Virginia Code § 48-10-801 (2001), "An order granting or refusing the grandparent's motion or petition for visitation must state in writing the court's findings of fact and conclusions of law."

4

agreement for visitation or communication with the adopted child and that the court may hear a petition to enforce the agreement. Chapter 48 of the West Virginia Code does not define "agreement" in this context.

However, the Supreme Court of Appeals of West Virginia ("SCAWV") addressed the issue of enforcing visitation agreements post-adoption in *Murrell B. v. Clarence R.*, 242 W. Va. 358, 371, 836 S.E.2d 9, 22 (2019) and specifically defined the term "agreement" for the purposes of West Virginia Code § 48-22-704(e). In *Murrell B.*, the child at issue had been living with Clarence R. and Nancy R. for a period of time under a guardianship order before the paternal grandparents, Murrell B. and Linda B., sought to adopt the child. 242 W. Va. at 361, 836 S.E.2d at 12. Clarence R. and Nancy R. did not object to the adoption, and merely indicated at the final adoption hearing that they desired visitation. *Id.* at 362, 836 S.E.2d at 13. The circuit court entered an order granting Murrell B. and Linda B.'s petition for adoption. The final order did not specify that visitation between the child and Clarence R. and Nancy R. would continue post-adoption. No one challenged the adoption order, and it became final. *Id.* Subsequently, the parties quarreled, and Murrell B. and Linda B. significantly reduced Clarence R. and Nancy R.'s contact with the child. *Id.* at 363, 836 S.E.2d at 14. Clarence R. and Nancy R. filed a petition for modification of visitation with the circuit court, and the circuit court granted the petition on two bases: (1) that Clarence R. and Nancy R. were the psychological parents and, (2) visitation was in the child's best interest. *Id.* at 364, 836 S.E.2d at 15. On appeal, the SCAWV reversed the circuit court's order.

In discussing whether the parties had an agreement for visitation that could survive the adoption, the SCAWV held that,

> an "agreement" for purposes of West Virginia Code § 48-22-704(e) (2015) is a manifestation of mutual assent between an adoptive parent(s) and a third party as to visitation or communication with an adopted child that is either stated in full in the final adoption order or explicitly referenced in that order and made an exhibit to it. All parties to the agreement must endorse the final adoption order and any agreement incorporated by reference. This holding comports with the common usage of the term "agreement" as well as its usage in § 48-22-704(e). It also safeguards the adoptive parent's right to the custody and control of his adopted child—a right that is equal to that of a biological parent and child.

*Id.* at 371, 836 S.E.2d at 22. Because the final adoption order did not state that the parties mutually agreed to continued visitation after the adoption became final, the SCAWV found that Clarence R. and Nancy R. were not entitled to continued visitation with the child and any visitation order was not enforceable. *Id.* at 372, 836 S.E.2d at 23.

5

Here, contrary to Petitioners Robert D. and Shelby D.'s arguments, the consent forms do not constitute enforceable agreements as contemplated by *Murrell B*. "Agreement" in this context, as defined by *Murrell B.*, requires that a manifestation of mutual assent between the adoptive parents and a third party with regard to visitation is either stated in full in the final adoption order or is explicitly referenced in that order and made an exhibit to the final order, and the final order and any agreement incorporated by reference must be signed by both parties. Here, the consent forms were not signed by Brian M. or Ashley M., nor were they incorporated into the final adoption order, stated in full in the final adoption order, or attached as an exhibit to the final adoption order. Simply put, there is no way the consent forms completed by Robert D. and Shelby D. can be viewed as an enforceable agreement for visitation under *Murrell B*.

To the extent that Petitioners Robert D. and Shelby D. argue that they were fraudulently induced into signing the consent forms, West Virginia Code § 48-22-704(b) provides that "[a]n order or decree of adoption may not be vacated, *on any ground*, if a petition to vacate the judgment is filed more than six months after the date the order is final." (Emphasis added). Moreover,

> Parental consent or relinquishment, whether given by an adult or minor, may be revoked only if:
>
> . . . .
>
> (2) The person who executed the consent or relinquishment proves by clear and convincing evidence, *in an action filed either within six months of the date of the execution of the consent or relinquishment or prior to the date an adoption order is final, whichever date is later*, that the consent or relinquishment was obtained by fraud or duress[.]

W. Va. Code § 48-22-305 (2001) (emphasis added). As such, if Robert D. and Shelby D. are now attempting to raise a fraud or duress argument, it is simply too late to do so.

Lastly, Petitioners Robert D. and Shelby D.'s argument that the Family Court failed to make sufficient findings of fact and conclusions of law is without merit. Pursuant to West Virginia Code § 48-10-801, "An order granting or refusing the grandparent's motion or petition for visitation must state in writing the court's findings of fact and conclusions of law." Aside from simply stating that the Family Court erred in failing to make findings of fact or conclusions of law, Robert D. and Shelby D. do not explicitly explain their issue with the Family Court's order. The order granting Respondents Brian M. and Ashley M.'s motion to dismiss contains findings of fact and conclusions of law that sufficiently support the Family Court's conclusion.

Accordingly, we find no error and affirm the Family Court's June 21, 2023, order.

6

Affirmed.

**ISSUED:**  February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear