**FILED**

**June 26, 2025**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.M.**

**No. 24-426** (Ohio County CC-35-2023-JA-15)

## MEMORANDUM DECISION

Petitioner Grandparents, S.M. and G.M.,[1] appeal the Circuit Court of Ohio County's July 1, 2024, order denying their motion for permanent placement of L.M., arguing that the court erred in finding that placement with them was not in the child's best interest.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In February 2023, the DHS filed an abuse and neglect petition[3] against L.M.'s father and mother, alleging that the home was in a deplorable condition, the mother abused drugs, and the father exposed the child to domestic violence. The following month, the DHS filed an amended petition alleging that the father abused drugs and specifying additional incidents of domestic violence. After the father and mother were adjudicated, the court ultimately terminated their parental rights in November 2023 and April 2024, respectively. Throughout these proceedings, the child resided in a foster home with his three older maternal half-siblings.

---

[1] The petitioners appear by counsel Kimberly M. Kosloski. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Joseph J. Moses appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children and adult respondents not at issue on appeal.

Upon the child's removal, the petitioners, who are the child's paternal grandmother and step-grandfather, requested that L.M. be placed with them. Because the petitioners reside in Ohio, a home study was required pursuant to the Interstate Compact on the Placement of Children ("ICPC"). Once the ICPC approved the petitioners' home, the multidisciplinary team ("MDT") met and decided not to separate the child from his siblings, as the children were thriving together in their foster home. This decision was shared with Petitioner Grandmother, who requested visitation with the child and was permitted to attend the last ten minutes of the father's supervised visits, which she did on approximately four occasions before the father's rights were terminated. In January 2024, after retaining counsel, Petitioner Grandmother filed a motion to intervene and a motion for permanent placement of the child.[4] The court granted the motion to intervene in February 2024. In March 2024, the petitioners filed an amended motion to intervene to include Petitioner Step-Grandfather, which it appears the court granted as later orders refer to him as an intervenor.

The petitioners' motion for permanent placement came on for an evidentiary hearing in June 2024. Petitioner Grandmother testified to her strong bond with the then twenty-two-month-old child and to their frequent visits prior to his removal. However, critical to the resolution of this appeal, she claimed that she did not know the child had endured chronic abuse, did not believe the child's father was abusive or violent, and did not know why the court had terminated his rights. Petitioner Grandmother was unconcerned about removing the child from the stable environment with his siblings, stating, "[h]e's going to be okay, just like he [was] okay with you . . . removing him from our lives." She further denied that the father lived with her, although he had recently visited her home, and claimed he would "not [be] welcome" if she were granted custody of the child. Finally, Petitioner Grandmother stated that if it was in the child's best interest, she would take his siblings so they could remain together. Testimony from DHS workers, however, contradicted many of Petitioner Grandmother's claims. Critically, one worker stated that the petitioners' home was not deemed an appropriate placement because the father "said that he . . . lived with [Petitioner Grandmother], ever since the case started." A second worker testified that "during several MDTs [the father] reported . . . that he resided in [the petitioners'] home" and that, regardless, the MDT determined that keeping the siblings together took "precedence" given their bond and that they thrived in their foster home. Contrary to Petitioner Grandmother's claim of a strong bond with the child, one worker testified that, soon after the child's removal, Petitioner Grandmother told her that while "she had seen [the child] a few times when he was very young," she "hadn't seen him in a while" and that "[the child] wouldn't even know her." At one of the supervised visits that Petitioner Grandmother attended, "[the child] didn't know her and was crying to not go near her." Finally, testimony from the children's foster mother confirmed that the child was extremely bonded with the siblings, and prior testimony from the older siblings' therapist and the psychologists who evaluated the older siblings confirmed that they struggled and regressed when the child was separated from them for supervised visits with his father.

---

[4] Prior to retaining counsel, Petitioner Grandmother wrote several letters to the court. In April 2023, she wrote a letter expressing her wish to "have some kind of contact" with the child. A few weeks later, she filed a second letter "to intervene on behalf of my grandson," stating that she had "been approve[d]" as of April 13, 2023, and desired the child be placed in her care.

Based on the evidence, the court found that the DHS considered the petitioners as a placement for the child and determined that placing the child with them was not in his best interests. The court further found that child's guardian agreed with the DHS's assessment. After noting that there is both a grandparent and a sibling placement preference under West Virginia law, the court conducted a best interest analysis. The court found that the siblings "suffered significant trauma together" while in their parents' custody and "remained bonded . . . and . . .very protective of each other." The court also noted that the children had been thriving in their current placement for sixteen months and were bonded to the foster parents. The court concluded that separating the child from his siblings was not in his best interest, as "it would be detrimental to [the child's] emotional and mental health." Rather, "[t]his Court believes and finds it to be in their best interests for these four siblings to remain with each other in the foster home." Consequently, the court denied the petitioners' motion for permanent placement of L.M.[5] It is from this order that petitioners appeal.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioners assert that the circuit court abused its discretion in denying their motion for permanent placement of the child. Specifically, the petitioners argue that the court erred by not appropriately considering Petitioner Grandmother's assurances that she would prevent the father from seeing the child, which is, in essence, an argument that the circuit court gave insufficient weight to her testimony. As we have previously noted, this argument "displays a fundamental misunderstanding of our role as a reviewing court. We review the circuit court's decision under . . . deferential standards . . . and do not reweigh the evidence or make credibility determinations." *In re D.S.*, -- W. Va. --, --, 914 S.E.2d 701, 707 (2025). The petitioners also argue that the court erred by preventing them from interacting with the child during the proceedings and thus "acted erroneously when it referenced the Petitioners lack of a bond with [the child] as part of its decision." However, the record is clear that the Petitioner Step-Grandfather never requested visits and that Petitioner Grandmother was granted visitation with the child. At least one visit revealed Petitioner Grandmother's lack of a bond with the child, as the child cried in an attempt to avoid her.[6] Regardless, it is clear that, upon

---

[5] The permanency plan for L.M. is adoption by the foster family. The child's three older siblings have been adopted by the foster family.

[6] The petitioners also assert that the circuit court abused its discretion in denying them ongoing grandparent visitation under West Virginia Code § 48-10-501. However, the petitioners fail to cite to any ruling from the circuit court on this issue, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, which requires that petitioners' brief include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Instead, the record shows that the petitioners failed to move for grandparent visitation pursuant to West Virginia Code § 48-10-501 at the hearing on their motion for permanent placement, as their motion for visitation was filed on June 28, 2024, *after* that hearing and only days before the court entered the July 1, 2024, order at issue on appeal. Regardless, the record indicates that the permanency plan for the child is adoption by the foster family. Any visitation the petitioners might have been granted would be automatically vacated upon the child's adoption by a non-relative. *See* Syl. Pt.

hearing and weighing all the evidence before it, the circuit court ultimately based its decision to deny the petitioners placement on its finding that it was in the child's best interest to remain in the foster home with his siblings. We will not disturb this finding on appeal.

The petitioners are correct that when determining a child's placement for adoption, there is a statutory preference for placement with a grandparent. *See* W. Va. Code § 49-4-114(a)(3) ("For purposes of any placement of a child for adoption . . . the department shall first consider the suitability and willingness of any known . . . grandparents to adopt the child."). There is also a sibling preference, which seeks to unite or reunite siblings when possible. *See* W. Va. Code § 49-4-111(e)(1) ("When a child . . . in a foster care arrangement . . . is residing separately from . . . siblings. . . and the parents with whom the . . . siblings reside" indicate to the department "an intent to adopt or to enter into a foster care arrangement . . . so that the child may be united or reunited with . . . siblings, the department shall . . . place the child in the household with the . . . siblings."); *see also* W. Va Code § 49-2-126(a)(6) ("Foster children . . . have the . . . right . . . to remain with siblings."). We have explained that the grandparent preference "is not absolute" because "the child's best interest remains paramount." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Indeed, "the preference for grandparent placement may be overcome . . . where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Id.* (quoting Syl. Pt. 4, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005)); *see also* Syl. Pt. 5, *In re A.F.*, -- W. Va. --, -- S.E.2d --, 2025 WL 1603901 (2025) ("In denying grandparent placement the circuit court must make detailed findings of fact and conclusions of law demonstrating that it considered the grandparent preference . . . and determined, based on the record in its entirety, that the preference was overcome by the best interests of the child."). Neither is the sibling preference absolute; a best interest analysis is still required. *See* Syl. Pt. 11, *In re R.S.*, 244 W. Va. 564, 855 S.E.2d 355 (2021) ("W. Va. Code § 49-2-126(a)(6) . . . requires a circuit court to conduct a best interest of the child analysis. . . [and] [o]ne factor that may be included in this analysis is a child's ability to remain with his . . . siblings.").

We conclude that the court appropriately denied the petitioners permanent placement of the child as the court conducted a best interest analysis and determined, based on extensive evidence, that it was in the child's best interest to remain with his siblings in the foster home. Critically, the court found that the child was thriving in the foster home, shared a bond with his siblings and foster parents, and that removal would harm the child's emotional and mental health. As we have explained, "[q]uestions relating to . . . custody of . . . children are within the sound discretion of the court [and] its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt. 2, *In re G.G.*, 249 W. Va. 496, 896 S.E.2d 662 (2023) (quoting Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977)). It is clear from the record that the circuit court did not abuse its discretion in denying the petitioners' motion for permanent placement of the child. And while the petitioners make much of the argument that both grandparent and sibling preferences could be honored if the court had placed all four children in their care, their motion sought only placement of L.M. Moreover, the petitioners cite to no place in the appellate record where they requested placement of all the children, as required by the West Virginia Rules of Appellate Procedure. *See* W. Va. R. App. P.

---

3, *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013). Accordingly, the petitioners are entitled to no relief.

4

10(c)(7) (requiring the petitioners' brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). As such, the petitioners are not entitled to relief.

We find no error in the decision of the circuit court, and its July 1, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: June 26, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV