# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: R.L. & E.L.**

**No. 14-0001** (Berkeley County 12-JA-104, 105 & 106)

**FILED**

June 2, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Maternal Grandmother, by counsel Ruth A. McQuade, appeals the Circuit Court of Berkeley County's December 3, 2013, order denying her permanent placement of, and post-adoption visitation with, the children, R.L. and E.L. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Stephanie E. Scales-Sherrin, filed a response on behalf of the children supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying her placement of the children and in denying her post-adoption visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 30, 2012, the DHHR filed a petition alleging abuse and neglect by the children's parents, mother S.C. and father R.L. Sr.[1] The petition was based, in part, on non-accidental trauma to R.L., then one month old. R.L. was taken to the hospital with various symptoms, including swelling of the head, and was diagnosed with shaken baby syndrome. It was also determined that R.L. suffered blunt force trauma to the head and broken ribs. As determined by the varying stages of healing, these injuries were the result of more than one incident, and neither parent ever provided a reasonable explanation for the child's injuries. Additionally, R.L. was born with cocaine in his system as a result of the mother's admitted drug use during pregnancy.

E.L. and R.L. were placed in an initial foster home, but the serious physical and neurological issues presented by R.L.'s injuries resulted in the foster family asking for the children to be placed elsewhere. Around this time, petitioner, the children's maternal grandmother, and the children's paternal grandmother both contacted the DHHR to be

---

[1]The case below originally concerned an additional child, C.K. However, C.K.'s father was eventually designated as a non-offending parent and C.K. was placed in his care. Petitioner does not seek placement of this child in her home and, accordingly, this memorandum decision does not address that child.

1

considered for placement. Both grandmothers resided in Virginia. At an initial hearing on September 12, 2012, the circuit court was made aware that both grandmothers sought placement of the children. The circuit court directed the DHHR to make the appropriate arrangements for assessing the homes for placement.

On September 26, 2012, DHHR employee Amber Braithwaite sent an Interstate Compact for the Placement of Children ("ICPC") request packet to the West Virginia ICPC office in Charleston, West Virginia, requesting that Virginia conduct a home study relevant to the paternal grandmother. The next day, the same worker sent a request packet seeking a home study of petitioner's home. These requests were then processed and forwarded to Virginia's ICPC office for completion of home studies. On October 25, 2012, E.L., then one year old, and R.L., then three months old, were placed in the foster home where they resided throughout the pendency of this case and continue to reside today. On November 13, 2012, petitioner received a letter and packet of paperwork regarding the home study process from Virginia's ICPC office. According to petitioner's later testimony, she was in the process of finishing nursing school at this time and also dealing with her mother-in-law's death. Accordingly, on November 28, 2012, petitioner called a worker in Virginia and told her she would not be able to complete the paperwork right away.

In May of 2013, the father, R.L. Sr., voluntarily relinquished his parental rights to R.L. and E.L. That same month, petitioner called the Berkeley County DHHR and asked to reinitiate the home study process. She also requested a visit with her grandchildren, whom she had not seen since their removal. The home study was reinitiated on June 20, 2013, and petitioner visited with the children on June 6, 2013. On June 27, 2013, petitioner filed a motion to intervene and obtain placement of the children. On July 2, 2013, the mother voluntarily relinquished her parental rights to all three children after a failed improvement period. On this same date, petitioner's motion to intervene was granted and an evidentiary hearing on placement was scheduled for the next month.

On August 21, 2013, the circuit court held a hearing on petitioner's motion for visitation and placement and agreed to allow each side to obtain expert evaluations and opinions on placement. Shortly thereafter, petitioner's home study was approved. The circuit court then held two hearings regarding permanency in late October and heard testimony from multiple expert and lay witnesses on the issue. The circuit court ultimately found that the children had bonded with their foster family, with whom they had resided for the prior year. The circuit court found that petitioner was a viable placement option, but because of her delay in completing the home study process, the children had formed a bond with the foster family. Additionally, expert testimony suggested a strong possibility that if the children were removed from the foster family, they would not be able to successfully form a parental attachment to petitioner. The circuit court permanently placed the children with the foster family and denied petitioner post-adoption visitation. It is from the resulting order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

2

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court denying petitioner's request for placement of the children or post-adoption visitation. In support of her allegation that the circuit court erred in denying her placement of the children, petitioner alleges the following: 1) that the circuit court, the DHHR, and the guardian ad litem all failed to serve the children's best interests; 2) that the circuit court ignored the DHHR's and guardian's failures to abide by statutes and regulations; and, 3) that the circuit court disregarded the testimony from petitioner's expert witness, Dr. Gail Shade. However, the Court finds no merit to any of these allegations.

We have previously held that

"[o]nce a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." Syllabus point 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010). In this matter, the record is clear that the parties below and the circuit court served the children's best interests throughout the pendency of the abuse and neglect proceedings and followed the applicable statutes and regulations. Petitioner's argument on this issue rests upon an allegation that all these entities failed to properly, fairly, and adequately consider her as a placement option for the children, and she supports the argument by citing to DHHR policy reports from 2005 through 2009, among other factors. Importantly, however, petitioner minimizes the specific facts of the case, fails to accept her own responsibility for the delay in her home being considered as a placement for the children, and ignores this Court's holdings regarding the grandparent preference.

In support of her argument, petitioner relies upon our holding in *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005), in which we addressed the grandparent preference as set forth in West Virginia Code § 49-3-1(a)(3). However, this Court has been clear that the preference for placing children with grandparents remains subordinate to the child's own best interests. We have held that

"[b]y specifying in West Virginia Code § 49–3–1(a)(3) that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case." Syllabus point 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005).

Syl. Pt. 3, *id.* Based upon this holding, it is clear that the circuit court did not err in denying petitioner placement of the children because her own delay in the home study process prevented her from being considered until such time as the children's best interests dictated that they remain in their foster placement.

The record is clear that the DHHR was aware of petitioner's desire to be a placement option for the children on or about August 30, 2012, the same day the abuse and neglect petition was filed. At the initial hearing in the abuse and neglect proceedings on September 12, 2012, the circuit court was made aware of petitioner's desire for placement and directed the DHHR to begin the referral process to the ICPC. That procedure was initiated and on November 13, 2012, petitioner received the appropriate paperwork required for her home study to be completed. However, by petitioner's own admission, she failed to complete the same and she did not seek to reinitiate the home study process until May of 2013. The Court notes that while there was a roughly three-month period between petitioner's express desire to be considered as a placement and her receipt of the necessary paperwork, this was a reasonable delay caused by the involvement of two separate entities from different states. Conversely, the roughly six-month period between petitioner's receipt of the paperwork and her request to reinitiate the home study process was caused entirely by petitioner's willful non-compliance with the ICPC's request for information necessary to consider petitioner's home as a placement option.

During the proceedings below, the paternal grandmother also sought placement of the children at her home in Virginia, having alerted the DHHR by telephone around the same time as petitioner. Additionally, at the September 12, 2012 hearing, the circuit court was also made aware of the paternal grandmother's desire for placement and similarly directed the DHHR to initiate the ICPC referral process. However, the paternal grandmother was compliant with the ICPC's request for completed paperwork, and the results of her home study were provided to the Berkeley County DHHR office by December 11, 2012. It is important to note that this was roughly one month after the children were placed in the foster home in which they still reside. As the circuit court noted in its order denying placement with petitioner, had petitioner completed the appropriate paperwork in the fall of 2012, "the case would be much different because there would not be a yearlong bonding experience between the children and the [foster family]."

Petitioner argues that the DHHR should have provided her with the opportunity for an expedited home study process pursuant to Regulation 7 of the ICPC, but the Court finds no merit to this argument. While it may be true that an expedited process would have been quicker and required less paperwork, petitioner's argument ignores the fact that she alone caused the delay in the home study procedure by failing to complete the necessary documents and that no expedited process could have been completed without her compliance. It is disingenuous for petitioner to argue that she was too busy to complete the paperwork provided because of nursing school and

her mother-in-law's death, while at the same time arguing that she would have been compliant with a less involved process if only the DHHR had offered the same.

Further, the Court notes that an expedited home study process would have provided no benefit to petitioner, as it is clear that the full ICPC home study process took roughly three months, as evidenced by the paternal grandmother's completion of the same. As the circuit court pointed out, petitioner could have completed the home study process by early December of 2012, at which point the risks associated with moving the children to petitioner's care that were present in August of 2013 likely would not have yet arisen. Petitioner argues that had an expedited ICPC been utilized, "the children would have been able to be placed with [her] around the time they were removed from the first foster home . . . ." However, petitioner fails to recognize that had she completed the paperwork in a timely manner, the children would have been in a similar position. Contrary to petitioner's argument that the circuit court penalized her for failing to complete this paperwork "during a time of personal crisis," the circuit court was instead forced to make its ultimate determination as to permanency following a lengthy delay that petitioner alone caused, and it properly considered the resulting risks that situation presented to the children's wellbeing.

The simple fact is that, while petitioner accuses the DHHR, the guardian, and the circuit court of failing to consider her for placement, petitioner prevented these entities from considering her by failing to participate in the home study process. As noted above, an approved home study is a prerequisite for consideration as a placement option. Further, petitioner accuses the guardian of advocating on the foster family's behalf by requesting they have appointed counsel to represent them in the proceedings below. However, petitioner fails to acknowledge that at the time this request was made, both the guardian and the DHHR supported placement with the foster family because it was in the children's best interests. Prior to July 2, 2013, petitioner was already represented by counsel and seeking to intervene in order to contest permanent placement. The guardian was acting in the children's best interests in requesting that counsel be appointed to represent the foster family in August of 2013 for purposes of the contested placement proceedings. As such, the Court finds that all entities below acted in accordance with the applicable statutes and regulations and in the children's best interests.

Further, the Court finds no merit in petitioner's argument that the circuit court disregarded the testimony of Dr. Shade, her expert witness. More accurately, the circuit court simply found the testimony from the expert witness retained by the guardian ad litem, Dr. Behrmann, more persuasive on the issue of the children's best interests. In fact, the circuit court devoted significant space in its order regarding placement to a discussion of the competing expert testimony, ultimately finding Dr. Behrmann's testimony more persuasive on the issue due, in part, to the fact that this witness "had a better opportunity to examine the children in [the foster home]." Ultimately, the circuit court found that "it is . . . unlikely that the children could establish [a parent-child] bond again" if they were removed from the foster parents and placed in petitioner's home. Dr. Berhmann testified that this risk to the children presented by moving them would be so detrimental that remaining in the foster home was in their best interests.

Petitioner argues that the testimony regarding potential harm resulting from another placement is speculative, while Dr. Shade's testimony that placement in a home with a biological

relative is in the children's best interests is concrete. However, the circuit court noted that Dr. Shade's testimony on this issue was based upon an express preference for relative placements similar to the statutory grandparent preference as found in West Virginia Code § 49-3-1(a)(3). As addressed above, such relative placements are not necessarily in a child's best interest, and the circuit court here properly weighed the available evidence in reaching its determination. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we note that the circuit court was in the best position to weigh witness credibility, and we find no error in the circuit court's determination that remaining in the foster home was in the children's best interests. For these reasons, we find no error in the circuit court denying placement of the children in petitioner's home.

Similarly, the Court finds no error in regard to the circuit court denying petitioner's request for post-adoption visitation with the children. Again, petitioner's argument on this issue concerns allegations that the circuit court ignored evidence that continued visitation was in the child's best interests, though petitioner acknowledges our recent holdings regarding grandparent visitation and asks this Court to revisit the law as it pertains to this issue. The Court, however, declines to vary from our recent cases on this issue. We have held that "[t]he Grandparent Visitation Act, W.Va.Code § 48–10–101 et seq. [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild." Syl. Pt. 1, *In re Hunter H.*, 231 W.Va. 118, 744 S.E.2d 228 (2013). Moreover, we have explicitly directed circuit courts that

> [p]ursuant to W.Va.Code § 48–10–902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

Syl. Pt. 3, *id.* While petitioner argues that the Court should re-examine this holding so as to make exceptions for continued contact with relatives after adoption by a non-relative consistent with the children's best interest, the Court notes that "[t]he best interests of the child are expressly incorporated into the Grandparent Visitation Act in W.Va.Code §§ 48–10–101, 48–10–501, and 48–10–502 [2001]." Syl. Pt. 2, *id.* For these reasons, the circuit court did not err in denying petitioner visitation with the children following their adoption by the non-relative foster parents.

For the foregoing reasons, we find no error in the decision of the circuit court and its December 3, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: June 2, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II